HEATH, The MARTHA M. See Case No. 7,113.

HEATON (JONES v.). See Case No. 7,468.

HEATON (MARCH v.). See Case No. 9,061.

———

## Case No. 6,311.

HEATON et al. v. QUINTARD et al.

[7 Blatchf. 73.] [1]

Circuit Court, S. D. New York.   Dec. 1, 1869.

PATENTS — INFRINGEMENT—WHAT CONSTITUTES — LIABILITY OF UNITED STATES GOVERNMENT FOR—ARMOR FOR VESSELS.

1. Where armor for a vessel was constructed by Q. under an order given for that purpose by the secretary of the navy of the United States, and was applied to a vessel built for the United States, and was paid for to Q. by the secretary of the navy: Held, that, although the armor may have been the same, in arrangement, as that covered by a patent, Q. was not liable, in a suit on the patent, for any value which the armor may have been to the United States.

2. The patent being for the application or employment of the armor on the vessel, the putting of the armor by Q. on a vessel owned by the United States, was not a making or using or vending to be used of the armor by Q.

[Distinguished in American Cotton Tie Supply Co. v. McCready, Case No. 295. Cited in United Nickel Co. v. Worthington, 13 Fed. 393.]

———

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

3. Whether the United States are excluded from the right to make for themselves and use a patented invention, without the consent of the patentee, under the grant by them to him of an exclusive right to make, use and vend it, quere.

4. The cases of Walker v. Congreve, 1 Carp. Pat. Cas. 356, and Feathers v. The Queen, 12 Law T. (N. S.) 114, discussed.

In equity. This was a final hearing, on pleadings and proofs, of a suit [by Charles W. S. Heaton and William H. Webb against George W. Quintard and others] founded on letters patent [No. 38,206], of the United States granted April 14th, 1863, to the plaintiff Heaton, for a "system of defensive armor for marine and land batteries." Such system was described in the specification of the patent as consisting of iron armor plates laid in the usual way against the longitudinal or outer timbers of a vessel, such timbers being such as to form a sufficient backing to rigidly support the armor plates, and of an outer layer of timber covering the armor plates, and only bolted on sufficiently to hold it to its place, and of a plate or thin sheath on the outer surface of the timber. The bill was filed in December, 1863.

Samuel D. Cozzens, for plaintiff.
Edward N. Dickerson, for defendants.

BLATCHFORD, District Judge. The alleged infringement in this case consisted in putting upon the Onondaga, a vessel of war constructed for the government of the United States, substantially the arrangement of armor described and claimed in the patent. The vessel was built by the defendant Quintard, under a contract made by him with the government of the United States to build her for such government. Such contract did not include the putting of any wooden armor outside of the iron armor. In March, 1863, the navy department of the United States gave directions to have the wooden armor put on. The vessel was then being built under such contract, and, while being built, belonged to the government. The iron armor was begun to be put on in May, 1863. The wooden armor and the outside plating thereon were begun to be put on in June, 1863, and the work of putting them on was finished in July, 1863. The defendant Quintard acted as agent for the government, in procuring such wooden armor and outside plating to be put on by one or both of the other defendants. The work in respect of the same was not done by contract but was done by days' work and by the pound. The government paid the bills therefor, through the defendant Quintard. The price so paid for such wooden armor and outer plating, and for putting them upon the vessel, was in addition to the contract price for the vessel as she was to have been constructed according to the contract, without such wooden armor and outside plating. Quintard paid out for the wooden armor and outside plat-

ing all the money that he received from the government therefor.

One of the defences set up in the answer is, that, as the wooden armor and outside plating were built in consequence of an order given for that purpose by the secretary of the navy of the United States, and were applied to a vessel built for the United States, and were paid for to the defendants by the secretary of the navy, the defendants are not liable for any value which such armor may have been to the United States. I think this is a good defence. To hold that workmen and employees of the government, who do work for it upon a vessel owned by it, and are paid by it for doing such work, such work being done in a specific form by the orders of the government, can be held liable in a court of the United States for infringing a patent by doing such work, would be, in effect and substance, to allow the government itself to be sued, in the guise of a suit against its workmen, and would lead to embarrassments of the operations of the government which might prove of serious detriment.

I have examined the case of Walker v. Congreve, 1 Carp. Pat. Cas. 356, cited for the plaintiffs. An ex parte injunction had been granted, restraining the defendant from making barrels for preserving and conveying gunpowder, alleged to be imitations of vessels covered by a patent obtained by the plaintiff. It was alleged that the defendant had violated the injunction by forwarding to the ordinance office of the British government, on its direction to that effect, some of the barrels, which had been previously made for the public service, and an application was made to the court of chancery, (Lord Eldon,) to commit him for a contempt. In the course of the hearing, Lord Eldon alluded to the fact that a public servant, as such, might not be liable to the consequences of a private suit for infringing a patent, and, therefore, would, in such case, not be subject to be enjoined. The defendant set up that he was not amenable for a contempt, as he was acting in a public capacity, and in the public service, while he superintended the making of the machines complained of. A motion was made at the same time to dissolve the injunction. On the suggestion of the court, and with the consent of the government, it was arranged that the government should keep an account of the barrels until there could be a trial at law on the patent, so that the public service might proceed without interruption and its demands be supplied, and the injunction was dissolved. The patent was not further contested. This case by no means supports the right of the plaintiffs to recover in this suit.

Another view of the present case is, that what the defendants did did not amount to an infringement of the patent. They nei-

ther made, nor used nor vended to others to be used the patented invention, in any proper sense. It was no infringement to make or fashion the articles which were to form the wooden armor and the outer plating, so long as they were not applied outside of iron armor on a vessel. The patent is limited to such application or employment. The testimony is, that the Onondaga belonged to the United States, while she was being built under the contract, although the contract was not considered by the government as having been fulfilled by the contractor until late in 1863, after the wooden armor and outer plating had been put on the vessel. In putting such wooden armor and outer plating upon a vessel owned by the government, the defendants cannot properly be regarded as having made such armor and outer plating. It was made by the government, by being put by it, through the defendants as its employees and workmen, upon a vessel of its own, as a defence to such vessel. So, too, the defendants have never infringed the patent by using the patented armor. The government, the owners of the vessel, alone used such armor, before the bill was filed. As to the vending to be used, there was no such armor to be vended until it became armor by being put upon the vessel, and the putting it, by the order of the government, upon a vessel owned by the government, which paid the defendants for it by the pound and by days' work, cannot be regarded as a vending of it, as armor, to the government.

Of course, in considering these questions, I refer only to what was done by the defendants before the bill was filed, and for which alone they are sued in this suit. What was done by the defendant Quintard subsequently, in purchasing the vessel from the United States government and selling her to the French government, is not involved in this controversy.

I do not intend, by any thing I have said, to intimate an opinion as to whether the government is or is not excluded from the right to make for itself and use the patented invention without the consent of the patentee, under the grant by it to him of an exclusive right to make, use and vend it. The subject is very ably discussed in a case decided by the court of queen's bench, in England, in 1865 (Feathers v. The Queen, 12 Law T., N. S., 114), in which a decision was arrived at, that the crown retained the right to use the patented invention in question there, being one relating to armor for vessels, although the grant by the crown to the patentee was one of sole privilege. Nor do I decide whether or not the patent to the plaintiff Heaton is valid. The bill is dismissed, with costs.

[For another case involving this patent, see Webb v. Quintard, Case No. 17,324.]